## MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT ("Agreement") is made and entered into effective on October 1, 2011 by and between New Hope Hospitality LLC, an Texas limited liability company having a notice address of 623 Bryans Way, Corsicana, TX 75110 ("Owner"), and Dhillon Management Company, LLC, having a notice address of 8000 Warren Pkwy #206, Frisco, TX 75034 ("DMC");

## W I T N E S S E T H:

WHEREAS, the Owner is the owner of the Hampton Inn & Suites located at 623 Bryans Way, Corsicana, Texas 75110 ("Hampton Inn"); and

WHEREAS, the Owner desires to engage DMC as CEO of the Hampton Inn & Suites and DMC agrees to such engagement subject to the terms and provisions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

1.    Engagement of DMC. The Owner hereby engages DMC and DMC hereby accepts such engagement as manager of the Hampton Inn & Suites and hereby authorizes DMC to perform the actions herein described on behalf of the Owner. DMC will be deemed to be an independent contractor within the meaning of the Internal Revenue Code of 1986, as amended, and will not be deemed to be the employee of the Owner.

2.    Term. The term of this Agreement will commence on October 1, 2011 and terminate on December 31, 2015.

2.1.    Sale of Hampton Inn & Suites. Furthermore, should the Hampton Inn be sold during this time of management, then the Agreement shall terminate with respect to that individual Hampton Inn& Suites as of the time of the closing of the sale.

1

Exhibit "B"

3.    Compensation of DMC. As compensation for all services to be rendered by DMC during the term of this Agreement, the Owner agrees to pay to DMC a management fee in the amount of four (4%) percent of net income ("Management Fee") payable at the conclusion of each month.

4.    DMC's Duties. Throughout the term of this Agreement, DMC will use DMC's best efforts and due diligence to manage and rent and manage the Hampton Inn & Suites in accordance with policies recommended from time to time by DMC and approved by the Owner. The services to be provided by DMC under this Agreement are to be of a scope and quality not less than those generally performed by professional managers of other similar Hampton Inn & Suites in the country.

5.    Collections. DMC will collect all revenues and other payments due the Owner with respect to the Hampton Inn & Suites.

6.    Operating Expenses. DMC will: (a) pay all expenses of operating the Hampton Inn from funds on deposit in the Operating Accounts (has hereafter defined); (b) negotiate and enter into contracts for janitorial, maintenance, water, electricity, gas, fuel, telephone, vermin extermination, trash removal and other services required to operate the Hampton Inn; (c) purchase supplies, equipment and materials which are required to lease, operate and maintain the Hampton Inn; (d) maintain the buildings, appurtenances and grounds of the Hampton Inn & Suites in a manner which maximizes the appearance and operation of the Hampton Inn to the Hampton Inn & Suites' potential; and (e) negotiate and enter into contracts for the rental and promotion of rentals of Hampton Inn& Suites rooms.

7.    Monthly Reports. DMC will keep full and adequate books of account and such other records as might be appropriate to reflect the results of operation of the Hampton Inn & Suites at a place approved by the Owner and in a manner reasonably acceptable to the Owner. DMC will provide Owner on a monthly basis, no later than the 20th day of each month, financial and operational reports, including, but not limited to a detailed Income/Expense Statement, Trial Balance, Check Register and Accounts Payable and Receivable Ledgers.

8.    Accounts; Disbursements. DMC will establish and maintain on behalf of the Owner a separate bank account in a manner to indicate the custodial nature thereof on deposit with the Owner or a financial institution designated by the Owner. Each such account will authorize withdrawals there from on the signature of DMC or the Owner.

8.1.    Operating Account.    The account ("Operating Accounts") will be styled "operating account" under the name of the individual property. DMC will deposit into the Operating Account and hold in a fiduciary capacity all monies furnished by the Owner and all funds received from the operation of the Hampton Inn. DMC will pay from the Operating Account all operating expenses of the Hampton Inn. To the extent the receipts of the Hampton Inn are insufficient to terminate and the rights and responsibilities of the parties shall terminate as to one another.

2

pay operating expenses of the Hampton Inn as the same become due, the Owner will provide such funds as are reasonably requested by DMC by deposit to the Operating Account.

9.    Personnel. DMC will hire, pay, supervise and discharge the personnel necessary to rent, maintain and operate the Hampton Inn. Such personnel will, in every instance, be employees of DMC and/or its assigns and not the Owner. DMC will have the right to supervise or direct such employees in the conduct of their duties, but the Owner may at any time require DMC to remove from employment at the Hampton Inn such employees as the Owner, in the Owner's discretion, deems unsatisfactory. DMC will be responsible for the timely deposit of all payroll taxes and preparation of all payroll tax returns. DMC will maintain such workers' compensation insurance coverage for DMC's employees as might be required under applicable law.

10.    Rentals. Throughout the term of this Agreement, DMC will use DMC's best efforts and due diligence to keep the rooms in the Hampton Inn occupied to the highest level possible to commercially desirable Hampton Inn guests.

11.    Compliance. DMC will take such action as might be necessary to comply with any orders or requirements issued by any governmental authority or other similar body having jurisdiction over the Hampton Inn including, without implied limitation, all laws relating to equal employment opportunity, environmental protection and workers' compensation insurance coverage.

12.    Termination. Immediately after the termination of this Agreement, DMC will: (a) deliver to the Owner all funds of the Owner held by DMC; (b) deliver to the owner all books, records and files in the possession of DMC pertaining to the management, maintenance, operation, leasing, marketing and use of the Hampton Inn; (c) deliver to the Owner all keys, combinations to locks, and other security devices on the Hampton Inn; (d) deliver to the Owner all equipment, furniture, furnishings, tools, supplies, inventory and other property of the owner in the possession of DMC; (e) render final reports to the Owner in accordance with this Agreement; (f) furnish to the Owner a complete inventory of all tangible personal property on site at the Hampton Inn; (g) assign to Owner all existing contracts relating to the operation, maintenance, leasing and marketing of the Hampton Inn; (h) remove all signs indicating DMC's management of the Hampton Inn and repair any damage resulting there from; and (i) render such assistance as the owner might reasonably request to facilitate an orderly transition in the management of the Hampton Inn.

13.    Entire Agreement. This Agreement constitutes the entire agreement between the Owner and DMC relating to the management of the Hampton Inn. This Agreement supersedes, in all respects, all prior written or oral agreements, if any, between the parties relating to the

3

management of the Hampton Inn and there are no agreements, understandings, warranties or representations between the Owner and DMC except as set forth herein.

14.     Headings. The headings used in this Agreement are for ease of reference only and are not intended to affect the interpretation of this Agreement in any way.

15.     Attorneys' Fees. If either party institutes an action or proceeding against the other relating to the provisions of this Agreement or any default hereunder, the unsuccessful party to such action or proceeding will reimburse the successful party therein for the reasonable expense of attorneys' fees, disbursements and other litigation expenses incurred by the successful party.

16.     Severability. If any provision of this Agreement is determined by a court having jurisdiction to be illegal, invalid or unenforceable under any present or future law, the remainder of this Agreement will not be affected thereby. It is the intention of the parties that if any provision is so held to be illegal, invalid or unenforceable, there will be added in lieu thereof a provision as similar in terms to such provision as is possible that is legal, valid and enforceable.

17.     Counterpart Execution. This Agreement may be executed in counterparts, each of which will be deemed an original document, but all of which will constitute a single document. This document will not be binding on or constitute evidence of a contract between the parties until such time as a counterpart of this document has been executed by each party and a copy thereof delivered to the other party to this Agreement.

18.     Assignment. The rights of DMC under this Agreement may not be assigned in whole or in part without the prior written consent of the Owner, unless such assignment is to an entity entirely owned or controlled by DMC.

19.     Amendment.   Neither this Agreement nor any of the provisions hereof can be changed, waived, discharged or terminated, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

20.     Governing Law. This Agreement is being executed, delivered and is intended to be performed in Navarro County, Texas, and the substantive laws of Texas will govern the validity, construction and enforcement of this Agreement. The parties consent to the venue and jurisdiction of any federal or state court sitting in Collin County, Texas in any action brought to enforce the terms of this Agreement. The parties irrevocably and unconditionally submit to the jurisdiction (both subject matter and personal) of any such court and irrevocably and unconditionally waive: (a) any objection any party might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

21.     Binding Effect. This Agreement shall be binding in the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the Effective Date hereof.

"OWNER"
New Hope Hospitality LLC.
An Texas limited liability company


By: _____
Jagmohan Dhillon, Managing Member


"DMC"
Dhillon Management Company, LLC
an Texas limited liability company


By: _____
Jagmohan Dhillon, Managing Member