Joyce W. Lindauer
Joyce Lindauer, PLLC
8140 Walnut Hill Lane, Suite 301
Dallas, Texas 75231
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR REORGANIZED
DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 12-31959 - HDH11 |
| NEW HOPE HOSPITALITY, LLC, | § | |
| Debtor. | § | Chapter 11 |

### MOTION TO REOPEN CASE

**TO THE HONORABLE HARLIN D. HALE,**
**UNITED STATES BANKRUPTCY JUDGE:**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT BEFORE CLOSE OF BUSINESS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF. ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY. IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

      **COMES NOW** New Hope Hospitality, LLC ("New Hope"), the reorganized debtor in the above-captioned case, and files this its *Motion to Reopen Case* ("Motion") and would respectfully show the Court as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(1), and the standing order of reference of the District Court.

2.     This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

MOTION TO REOPEN CASE        **1**

3.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

4.      New Hope, Debtor in the above-captioned case, is a limited liability company that owns a hotel.

5.      On March 30, 2012 New Hope filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), instituting the above-captioned case.

6.      On December 11, 2012 Debtor filed its plan of reorganization [Doc. No. 59] (the "Plan").

7.      On January 4, 2013 EH National Bank made its Election of Secured Creditor Pursuant to 11 U.S.C. Section 1111(b) [Doc. No. 64].

8.      On January 11, 2013 New Hope filed its Amended Chapter 11 Plan [Doc. No. 68].

9.      On February 5, 2013 New Hope filed its Modified Chapter 11 Plan [Doc. No. 83].

10.     On March 13, 2013 New Hope filed a further Modified Chapter 11 Plan [Doc. No. 99].

11.     On March 29, 2013 the Plan, as modified was approved [Doc. No. 106] and the Court entered an order confirming the Plan (the "Confirmation Order").

12.     The Plan's effective date was in 2013 (the "Effective Date"), and following the Effective Date, under the Plan the New Hope commenced payments to its creditors and EH National Bank.

13.     A final decree was entered and the case closed on September 19, 2013 [Doc. No. 118].

14.     After the case was closed New Hope arranged financing to pay off its creditors on or about January 27, 2015.

15.     When New Hope requested a pay-off from Excel National Bank given the effect of the Section 1111(b) election the New Hope came up with an amount to pay-off the Bank and the Bank refused to accept the payoff. Accordingly, New Hope overpaid the Bank in the amount of at least $407,868.56. New Hope also received a demand for payment from an unsecured creditor who had

already been paid in full its amount as an unsecured creditor and New Hope seeks to recover $135,000

from Corsicana Lodging, LLC.  New Hope seeks to recover these overpayment amounts.

16.    New Hope now brings the instant Motion.

## ARGUMENTS AND AUTHORITIES

17.    Pursuant to 11 U.S. Code § 350 and Fed. R. Bankr. P. 5010, on motion of a party in

interest this Court may reopen a bankruptcy case for cause.[1]  While the Code does not define "cause" in

this context, Bankruptcy Courts in the Northern District of Texas have recognized that they have

significant latitude in their ability to reopen a case to grant a petitioner relief.[2]

18.    In the instant case, New Hope seeks to reopen the case in order to enforce the terms of

the confirmed Plan.  The confirmed Plan and Order of Confirmation are attached hereto as Exhibit "1"

and "2" respectively.

**WHEREFORE, PREMISES CONSIDERED,** New Hope Hospitality, LLC requests the Court

reopen the case, and for such other and further relief, both at law and in equity, to which they may

show themselves to be justly entitled.

**DATED: FEBRUARY 24, 2015**

Respectfully submitted

 /s/ Joyce Lindauer
Joyce W. Lindauer
Joyce Lindauer, PLLC
8140 Walnut Hill Lane, Suite 301
Dallas, Texas 75231
Telephone: (972) 503-4033

---

1    11 U.S. Code § 350(b)(" A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."); Fed. R. Bankr. P. 5010("A case may be reopened on motion of the debtor or other party in interest pursuant to §350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.")

2    In Re Sl Management, LLC, No. 08-40143-rfn-11 (Bankr. N.D. Tex. Mar. 30, 2010)("Under section 350(b), a bankruptcy court may reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Bankruptcy courts have significant flexibility in deciding whether to close or reopen bankruptcy cases.").

Facsimile: (972) 503-4034

**ATTORNEYS FOR REORGANIZED
DEBTOR**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 24, 2015 the foregoing was served on the

attached mailing matrix via either USPS first class mail postage prepaid or the Court's ECF system.

_/s/ Joyce Lindauer_____
Joyce W. Lindauer

Label Matrix for local noticing
0539-3
Case 12-31959-hdh11
Northern District of Texas
Dallas
Tue Feb 24 12:43:33 CST 2015

Dillon Management Company
8000 Warren Pkwy No. 206
Frisco, TX 75034-2292

EH National Bank
c/o StrombergStock
Two Lincoln Centre
5420 LBJ Frwy
Ste 300
Dallas, TX 75240-6271

Hampton Inns Franchise, LLC
c/o Larry E. Kelly
220 South Fourth Street
Waco, TX 76701-2225

Navarro County
Linebarger Goggan Blair & Sampson, LLP
c/o Elizabeth Weller
2323 Bryan Street
Suite 1600
Dallas, TX 75201-2637

Texas Comptroller of Public Accounts
Jason Starks
P.O. Box 12548
Austin, TX 78711-2548

United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-0996

1100 Commerce Street
Room 1254
Dallas, TX 75242-1305

AT & T
PO Box 5019
Carol Stream, IL 60197-5019

AT & T Wi-Fi Services
Dept 0200
PO Box 120220
Dallas, TX 75312-0220

ATMOS ENERGY CORPORATION
ATTN: BANKRUPTCY
PO BOX 650205
DALLAS TX 75265-0205

All-N-1 Fire & Safety Inc.
PO Box 851584
Mesquite, TX 75185-1584

Allied Waste
1450 E. Cleveland
Hutchins, TX 75141-4004

American Express Bank FSB
c/o Becket and Lee LLP
POB 3001
Malvern  PA 19355-0701

Atmos Energy
PO Box 790311
St. Louis, MO 63179-0311

Attorney General of Texas
Bankruptcy Division
PO Box 12548
Austin TX 78711-2548

Bryants Landscape
11910 FM 709 S
Dawson, TX 76639-3173

City of Corsicana
200 N. 12th St.
Corsicana, TX 75110-4616

City of Corsicana Utility Billing
200 N. 12th St.
Corsicana, TX 75110-4616

Commercial Lighting Industries
81161 Indio Blvd.
Indo, CA 92201-1931

Comptroller of Public Accounts
c/o Office of the Attorney General
Bankruptcy - Collections Division
PO Box 12548
Austin TX  78711-2548

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

Corsicana-Navarro County
Chamber of Commerce
120 North 12th St.
Corsicana, TX 75110-5205

Courtesy Products
PO Box 840020
Kansas City, MO 64184-0020

DMX Inc.
PO Box 660557
Dallas, TX 75266-0557

EH National Bank
9701 Wilshire Blvd.
Suite 101
Beverly Hills, CA 90212-2026

Edward Don & Company
2562 Paysphere Circle
Chicago, IL 60674-0025

Fire-Tech Protection Systems
PO Box 79
Wills Point, TX 75169-0079

Flagsource
JC Schultz Enterprises Inc.
951 Swanson Dr.
Batavia, IL 60510-4231

Focus Services
1721 Corporate Ave.
Memphis, TN 38132-1702

Hampton Inns Franchise LLC
7930 Jones Branch Drive
McLean, VA 22102-3388

Hilton Worldwide
4649 Paysphere Circle
Chicago, IL 60674-0046

Hudson Energy
PO Box 142109
Irving, TX 75014-2109


IDLM Power Washing Service
928 Hideawa Place
DeSoto, TX 75115-5213

Internal Revenue Service
Mail Code DAL-5020
1100 Commerce Street
Dallas TX 75242-1100

Jason A. Starks
Assistant Attorney General
Bankruptcy & Collections Division
PO Box 12548
Austin, TX 78711-2548


Lands End Business Outfitters
1 Lands End Lane
Dodgeville, WI 53595-0001

Lonestar Logos & Signs LLC
611 S. Congress Ave. 300
Austin, TX 78704-1700

National Aquatic Compliance LLC
7534 N. La Cholla Blvd.
Tucson, AZ 85741-2307


Navarro County
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie Spindler Huffman
2323 Bryan Street Ste 1600
Dallas, Texas 75201-2637

New Hope Hospitality, LLC
8000 Warren Pkwy.
No. 206
Frisco, TX 75034-2292

Newcrest Management, LLC
1135 Kinwest Parkway # 150
Irving, TX 75063-3510


Property Tax Lending
17950 Preston Rd.
Suite 650
Dallas, TX 75252-4605

Royal Cup Coffee
PO Box 170971
Birmingham, AL 35217-0971

Royal Cup, Inc.
co Tom Jordan
PO Box 170971
Birmingham, AL 35217-0971


Schindler Elevator Corp.
1530 Timberwolf Dr.
Holland, OH 43528-9161

Sherwin Williams
CO Accounts Receivable
1221 W. 7th Ave.
Corsicana, TX 75110-6372

State Comptroller
PO Box 149356
Austin, TX 78714-9356


Sysco Guest Supply
PO Box 910
Monmouth Junction, NJ 08852-0910

Terminex
3900 Willow
Suite 130
Dallas, TX 75226-1201

Texas Workforce Commission
101 E. 15th St.
Austin, TX 78778-0001


Texas Workforce Commission
Regulatory Integrity Division - SAU
101 E 15th Street, Room 556
Austin TX 78778-0001

US Attorney
Main & Justice Bldg
10th & Pennsylvania NW
Washington, DC 20530-0001

US Trustees Office
1100 Commerce St. Rm. 9C60
Dallas, TX 75242-9998


United Rentals North America Inc.
3200 Harbor Lane N
Minneapolis, MN 55447-5295

VFM Leonardo Inc.
PO Box 311116
Detroit, MI 48231-1116

Yumi Ice Cream Inc.
PO Box 674003
Dallas, TX 75267-4003


Arthur I. Ungerman
Arthur I. Ungerman, Esquire
12720 Hillcrest Road
Suite 625
Dallas, TX 75230-2035

Joyce W. Lindauer
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road
Suite 625
Dallas, TX 75230-2035

Samir Patel
4099 McEwen, Ste 410
Dallas, TX 75244-5041

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Comptroller of Public Accts
Rev Acctg Div BK Sec
PO Box 13528
Austin TX 78711




The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)EH National Bank                  (d)Navarro County                End of Label Matrix
                                     Linebarger Goggan Blair & Sampson, LLP    Mailable recipients    59
                                     c/o Elizabeth Weller             Bypassed recipients     2
                                     2323 Bryan Street Suite 1600     Total                  61
                                     Dallas, TX 75201-2637

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:                                            §
                                                  §
**NEW HOPE HOSPITALITY, LLC,**                    §    **CASE NO. 12-31959-hdh-11**
Debtor                                            §    **Chapter 11**
                                                  §

## FIRST AMENDED PLAN OF REORGANIZATION
## DATED JANUARY 11, 2013

     New Hope Hospitality, LLC ("The Debtor") proposes the following Plan of Reorganization ("Plan") Dated January 11, 2013 pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtor. The Debtor's profitability to fund the Plan is based on the amount of money that it will earn from the continued operation of its business. The Debtor will file periodic financial reports with the Court as required by the Code covering its profitability, projections of cash receipts and disbursements for a reasonable period and a comparison of actual cash receipts and disbursements with projections in prior reports. These reports shall be available on the Court's PACER site at www.txnb.uscourts.gov using the Debtor's name and/or case number as referenced above.


EXHIBIT
1

### TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS .................................................... 3

ARTICLE II - CONCEPT OF THE PLAN ...................................................................... 6

ARTICLE III - GENERAL TERMS AND CONDITIONS ................................................ 6

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ............ 7

ARTICLE V - PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS...7

ARTICLE VI - MEANS FOR IMPLEMENTATION OF PLAN ....................................... 16

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS AND
        UNEXPIRED LEASES ............................................................................................. 16

ARTICLE VIII - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS... 16

ARTICLE IX - EFFECT OF CONFIRMATION ............................................................. 17

ARTICLE X - MISCELLANEOUS PROVISIONS ....................................................... 18

ARTICLE XI - MODIFICATION OF THE PLAN .......................................................... 20

ARTICLE XII - RETENTION OF JURISDICTION ........................................................ 20

## ARTICLE I
## DEFINITIONS AND USE OF TERMS

**1.01**        **Defined Terms**.  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01**        **Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor and Debtor's property under 28 U.S.C. Section 1930.

**1.01.02**        **Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03**        **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (I) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

**1.01.04**        **Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.05**        **Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.01.06**        **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07**        **Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure.

**1.01.08**        **Bar Date** means subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.01.09**        **Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.091**        **Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.10**        **Claimant** means any person or entity having or asserting a Claim in the

case.

**1.01.11**      **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtor has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.12**      **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.13**      **Confirmation Date** means the date on which the Confirmation Order is entered.

**1.01.14**      **Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

**1.01.15**      **Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.16**      **Contested** when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated;(b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.17**      **Creditor** shall have the meaning specified by Section 101(9) of the Code.

**1.01.18**      **Debtor** means New Hope Hospitality, LLC.

**1.01.19**      **Disputed Claim** means any Claim that is not an Allowed Claim.

**1.01.20**      **Effective Date** means thirty days after the Confirmation Date.

**1.01.21**      **Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

**1.01.22**      **Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

**1.01.23**      **Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.01.24**      **Final Order** means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to

which the time for appeal has expired.

**1.01.25** **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.01.26** **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (I) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; ©) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.01.27** **Petition Date** means March 30, 2012, the date the Debtor's voluntary petition was filed commencing this bankruptcy case.

**1.01.28** **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

**1.01.29** **Pre-petition** means prior to the Petition Date.

**1.01.30** **Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.01.31** **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.01.32** **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.

**1.01.33** **Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.34** **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.35** **Secured Tax Claim** means any Tax Claim of a governmental unit which

is secured by real or personal property.

     **1.01.36**     **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

     **1.01.37**     **Unimpaired** means not Impaired.

     **1.01.38**     **Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor.

     **1.01.39**     **Unsecured Claimants** or **Unsecured Creditors** means any holder of an Unsecured Claim.

     **1.01.40**     **Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

     **1.02**     **Number and Gender of Words**.  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

     **1.03**     **Terms Defined in the Bankruptcy Code**.   Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

     **1.04**     **Headings**.    The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

     **1.05**     **Time Computation**.  In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

**ARTICLE II**
**CONCEPT OF THE PLAN**

     **2.01**     **Generally.** The Plan is a plan of reorganization. The Debtor shall continue its business after the Effective Date.  The Debtor's primary business is owning and operating a hotel in Corsicana, Texas doing business as a Hampton Inn. The Debtor's business operations will provide the income and means for implementation of this Plan and are set forth in more detail in the accompanying Disclosure Statement.

**ARTICLE III**
**GENERAL TERMS AND CONDITIONS**

     **3.01**     **Treatment of Claims.** This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments afforded by the Plan. The Plan is designed to insure that Claimants shall receive at

least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02    Time for Filing Claims.** The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

### ARTICLE IV
### DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Plan consists of the following Classes of Claims:

4.01          <u>Class **1**</u> consists of any Allowed Administrative Claims.

4.02          <u>Class **2**</u> consists of any Allowed Secured Property Tax Claims.

4.03          <u>Class **3**</u> consists of the Allowed Secured Claim of Property Tax Lending.

4.04          <u>Class **4**</u> consists of any Allowed Priority Tax Claims.

4.05          <u>Class **5**</u> consists of the Allowed Secured Claim of EH National Bank.

4.06          <u>Class **6**</u> consists of the General Unsecured Claims.

4.07          <u>Class **7**</u> consists of the Shareholders' Interests.

### ARTICLE V
### PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

**Class 1 Claims.** The Class 1 Claims will be paid once Allowed in full by the Debtor and on or before the Effective Date. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Hamptons Inn Franchise, LLC, ("Hamp")

Debtor's attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment. Payment of post-petition franchise fees to HAMP shall continue to be paid in the ordinary course. HAMP is not required to file a request for payment of administrative expenses, and the requirement for Debtor to make all such payments in the ordinary course is incorporated into this Plan by this provision. The arrearage claim of the franchisor, HAMP, will be paid once allowed over 90 days in equal monthly installments from the Effective Date. HAMP shall be allowed reasonable attorneys fees and expenses.

The Debtor has an obligation under its Franchise Agreement with HAMP to make periodic upgrades to the Hotel to improve its functionality. These upgrades include upgrading the exercise room and the lobby. Debtor has budgeted $131,741.00 for these upgrades. The work will begin on the Effective Date and will be funded through cash on hand.

**Class 2 Claims**. The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims and to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Debtor as part of this Plan.

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid once Allowed over sixty (60) months from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to

Page 8

vote to accept or reject the Plan.

**Class 3 Claims**. The Class 3 Claim of Property Tax Lending will be paid as Allowed as follows:

The Class 3 Claim will be paid once Allowed over 120 months. The payments shall be made in equal monthly payments of principal and interest at the rate of 12% per annum on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan. The Class 3 Claim shall retain its lien under the Plan until paid in full.

The Class 3 Claim is Impaired and the holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

**Class 4 Claims**. The Class 4 Claims will be paid once Allowed as follows: These claims will be paid in equal monthly payments over five (5) years from the Petition Date with interest on such amounts at the rate of 4.5% per annum from the Effective Date until paid in full. These claims are priority claims. A failure by the reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure and Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

The Class 4 Claims are Impaired and the holders of the Class 4 Claims are entitled to vote to accept or reject the Plan.

**Class 5 Claims**. The Allowed Secured Claim of EH National Bank.

The Debtor owes EH National Bank a total of $5,770,054.96 arising from two promissory notes. The Debtor owes $4,960,663.94 under the first Promissory Note dated September 17, 2008 and $809,391.02 under the second Promissory Note dated August 31, 2009. EH National Bank has taken the Section 1111(b) election as explained below.

EH National Bank shall be paid based on an Allowed Secured Claim of $4,250,000.00 (the "Allowed Secured Claim") and shall be paid in full over ten (10) years with the Allowed Secured Claim of $4,250,000.00 amortized over thirty (30) years with interest on such Allowed Secured Claim at the effective rate of 4.85% and a balloon payment of $3,455,214.03 at the end of the ten (10) years.

The terms of the Bank Note will continue to control the effective interest rate applied to the restructured payments. The interest rate shall remain adjustable thereunder. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. This amount does not take into consideration the adequate protection payments made to EH National Bank

Page 9

made during the pendency of the case which amounts shall be credited to the Debtor.

The Class 5 Claim shall retain all of its liens and security interests as originally provided in its loan documents until paid off. The Bank Note, Deed of Trust and other collateral documents shall remain fully enforceable except as modified by the terms of the Plan. The Bank shall continue to exercise its right to require a monthly escrow (or monthly payment) for annual insurance premiums and real estate taxes. The Debtor will be required to continue to provide to Bank, monthly profit and loss statements, occupancy statements and year-end financial statements and tax returns.

Section 1111(b) is sometimes regarded as one of the more recondite sections of the Federal Bankruptcy Code. Section 1111(b) reads as follows:

l. (b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless:

(i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or

(ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

(B)    A class of claims may not elect application of paragraph (2) of this subsection if –
(i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or

(ii) the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under section 363 of this title or is to be sold under the plan.

(2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

Section 1111(b)(1)(A) establishes a general rule that the holder of a secured claim in a chapter 11 case shall have recourse against the debtor for the amount of the claim, even if the holder would *not* have a recourse claim outside of a chapter 11 case. The purpose behind the enactment of section 1111(b) was to protect the rights of non-recourse lienholders in Chapter 11 reorganizations." By way of illustration, a secured creditor who waives recourse against its borrower, and who agrees to look only to its collateral for recovery, is still nevertheless given a statutory recourse claim against the borrower if the borrower becomes a chapter 11 debtor. This means that an undersecured creditor acquires a statutory deficiency claim against the chapter 11 debtor, even if that creditor would otherwise have no such claim. The statute also assures that if the holder already has a recourse claim, that claim is preserved. Another way of summarizing the

Page 10

statute is to say it either preserves *or* confers a deficiency claim, thus assuring that the undersecured creditor will have such a claim.

### Exceptions to the Statutory Recourse Claim

#### 1. Exception: Property Is Not Retained

However, section 1111(b)(1)(A) establishes two exceptions to the general rule conferring a statutory recourse claim. The easer exception to understand is the second one mentioned in the statute, namely: if the secured claim holder does not have recourse (that is, has no recourse outside of Chapter 11), *and* the property is sold under section 363 or is sold under the plan, then there is no statutory recourse (i.e., deficiency) claim. That means that the statutory recourse claim applies, if at all, *only* if the chapter 11 debtor retains the property under a chapter 11 plan.

#### 2. Exception: The §1111(b) Election Is Made

There is a second exception to the statutory recourse claim, and its exception is contained in section 1111(b)(1)(A)(i). In essence, this second exception is that the *class* of claims of which the claim having statutory recourse is a part *may* elect to have the claim treated as secured to the extent allowed. There are two limitations, or exceptions, governing when the Section 1111(b) Election can *not* be made. The first limitation is when the lien is of "inconsequential value." Such an election makes no sense if the lien has no value or very little value; indeed, without this limitation, the election would gratuitously confer secured creditor status upon an unsecured creditor. It should be noted, however, that as long as there is *some* value to the lien, even if it is so inconsequential that the Section 1111(b) election is unavailable, the statutory unsecured recourse claim is still available because it operates in the absence of the election. The second limitation on the Section 1111(b) election is that the election is *not* available if the holder has recourse against the debtor, *and* the property (i.e., the collateral) is sold under the chapter 11 plan or under section 363 of the Code. The second limitation also follows from the nature of the election, which is that the creditor's entire claim is treated as secured *if* the debtor keeps the property *and* the creditor waives any deficiency claim. But this second limitation assumes that the debtor is *not* keeping the property and, further, that the creditor *does* have a recourse (or deficiency) claim. In those circumstances, which are the precisely opposite of those on which the availability election is predicated, it makes sense for the Election not to be available.

### SIGNIFICANCE OF THE SECTION 1111(b) ELECTION

The Election requires that, even though any recourse (deficiency) claim against the estate is waived, the claimant's entire claim, to the extent it is allowed, must be treated as a secured claim under a Chapter 11 plan. Section 1111(b)(2) provides: "[i]f such an election is made, then notwithstanding Section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed". Conversely, if no election is made, the claim remains bifurcated into secured and unsecured portions, the deficiency portion being, of course, unsecured.

#### 1.    Significance of the Election: Treatment of Claims Under § 1129

The significance of the election, however, appears nowhere in Section 1111. Its significance lies in the provisions of §1129(b), which prescribe the minimum treatment that a secured claim must receive if a Chapter 11 plan is to be confirmed, where the plan has not been accepted by the class to which that secured claim belongs. Thus, while the Section 1111(b) election is sometimes summarized as the waiver of a deficiency claim, it is more helpful to think of it as electing the plan treatment required by section 1129(b)(2)(A).

Section 1129(b)(1) requires confirmation of a plan if all conditions for plan confirmation are satisfied, other than voting acceptance, provided "the plan does not discriminate unfairly and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." Section 1129(b)(2), in turn, defines "fair and equitable" as:

(A) with respect to a class of secured claims, the plan provides -- (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

In sum, subsection (A)(i) assures that if the property securing a claim is retained, then the claimant will receive deferred cash payments that both total the allowed amount of the claim and have a value on the effective date of the plan at least equal to the value of the claimant's lien. For example, if the creditor has an allowed claim of $1000 secured by collateral having a value of $700, the claimant must receive payments that aggregate $1000 over time and have a present value of at least $700.

Subsection (A)(iii) has the possibility of providing the "indubitable equivalent of such claim" in lieu of the cash payments prescribed in subsection (A)(i). 680 Fifth Ave. Assocs. v. Mut. Benefit Life Ins. Co. (In re 680 Fifth Ave. Assocs.), 156 B.R. 726, 733 (Bankr. S.D.N.Y.), aff'd, 169 B.R. 22 (S.D.N.Y. 1993), aff'd, 29 F.3d 95 (2d Cir. 1994). Moreover, if a Section 1111(b)(2) election is made, Section 1129(a)(7)(B) requires that "property" be furnished. Section 1129(a)(7) provides as follows:

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a

Page 12

value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

It has been held that when a creditor makes the Section 1111(b) election, it may not vote on the plan. The rationale seems to be that upon receiving section 1129(b) treatment, the claim is no longer considered impaired. Such rationale is questionable. However, the loss of voting rights does not make the creditor exercising the Section 1111(b) election powerless to influence the plan. Confirmation of a plan requires that "the plan complies with all applicable provisions of this title". Accordingly, the electing creditor has the opportunity to be heard at the plan confirmation hearing concerning whether the deferred cash value of payments equals the present value of the collateral (*i.e.*, litigate the discount rate) as well as to contest the debtor's ability to make the payment (*i.e.*, litigate plan feasibility).

### 2.    Significance of Not Electing: Treatment of Claims Under § 1129

In the absence of the Section 1111(b) election, the undersecured creditor could be at risk. The following paraphrases and condenses a hypothetical example:

> A debtor partnership owns real property encumbered by a $5 million first mortgage, a $3 million second mortgage and a $2 million third mortgage. The court values the property at $7.5 million. As a result, a plan is confirmed assuming the first mortgage, trimming the second mortgage to $2.5 million and cancelling the claim on the third mortgage. Post-confirmation, the Debtor sells the Property for more than $7.5 million and keeps all proceeds in excess of $7.5 million.

7 Collier on Bankruptcy ¶ 1111.03[i][a] (15th ed. rev. 2005).

**In the instant case the pertinent facts can be summarized as follows:**

Class 5 EH National Bank Secured Claim $4,250,000.00

Class 6 EH National Bank Unsecured Claim $ 1,520,054.96

**These claims are based on the following assumptions: Total Claim Amount $5,770,054.96 and value of the collateral $4,250,000.00. The current Plan proposes to pay the Allowed Secured Claim $22,496.90 a month based on a 30 year amortization and a 4.85% annual percentage rate for 120 months. Assuming that this period and rate are approved the total paid to EH National Bank over the next 120 months is roughly $2,699,628.00. The balloon payment on the Allowed Secured Claim amount in 120 months would be $3,455,214.03. Under the Section 1111(b) election, the total payments paid out at the end of 120 months would be $2,699,628.00. Such amount would then be subtracted from the Total Claim Amount of $5,770,054.96 leaving an unpaid balance in 120 months of $3,070,426.96.**

The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to

Page 13

accept or reject the Plan.

**Class 6 Claim** The Class 6 Claims will be paid as Allowed as follows:

The Class 6 Claims as Allowed General Unsecured Claims shall be paid once Allowed at 5% of their claims over five (5) years. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until 5% of their claims are paid.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor and by mail to the Debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holders of the Class 6 Claims shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holders of the Class 6 Claims.

The Class 6 Claims are Impaired and the holders of the Class 6 Claims are entitled to vote to accept or reject the Plan.

**Class 7 - Equity Interests.** On the Confirmation Date, all Equity Interests shall be treated as follows:

On the Effective Date, all equity interests shall be cancelled. The new equity interests in the Debtor shall be issued 65% to Jagmohan Dhillon, 17.5% to Tarlochan Kataria and 17.5% to Gurender Sahani who are contributing to the Debtor $65,000.00 total. $65,000.00 shall be deposited into the Debtor's counsel's trust account prior to the Confirmation Date. If the Plan is not Confirmed, the $65,000.00 will be returned to Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani.

The Debtor believes that the Plan will not violate the absolute priority rule and will be consensual as to the unsecured creditors. In the event that the Class 6 unsecured creditors do not vote for the Plan, and the Bankruptcy Court requires an auction, then: (i) the Existing Equity Interests will be cancelled on the Effective Date, (ii) the new equity interests in the Debtor shall be sold at an Auction sale as set forth herein, and (iii) the new equity interests in the Debtor shall be issued to the successful bidder for the interest in the Debtor at the Auction, subject to the terms of this Plan. If the Plan is not confirmed by the Court at the Confirmation Hearing, then the sale of the equity interests shall not proceed and the sale shall be cancelled. The Debtor shall remain the same corporate entity, without change in its structure.

The auction (the "Auction") under the Plan shall be held at the Confirmation Hearing. Any person or entity that desires to be considered for a possible bid must serve on counsel for the Debtor and EH National Bank (the "Bank") at least seven (7) business days prior to the Confirmation Hearing the following bid and supporting information (collectively, a "Bid") (i) a

Page 14

copy of its proposed bid containing the cash purchase price for the equity interests in Debtor, and all terms and conditions of the Bid, (ii) information identifying the proposed purchaser and all persons or entities who will own or control the proposed purchaser, (iii) information identifying the financial ability of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan, (iv) information identifying the relevant experience and management of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan, (v) an agreement by the proposed purchaser, and all persons who own or control the proposed purchaser, to execute at Closing the Purchaser Guaranty, in a form acceptable to the Bank.    The Debtor, the Bank and any other party- in- interest may object to any proposed Bid for any reason.

If an Auction proceeds, the new equity interests in Debtor shall be sold for the highest and best bid, consistent with the terms of the Plan and subject to objections by creditors and parties-in- interest.    Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani's combined opening bid at an Auction sale is $65,000.00 for 100 percent of the new equity interests.  Any Bid by another person or entity must exceed $65,000.00 by at least $10,000 and must provide for a full and unconditional guaranty of payment and performance the Bank's Allowed Secured Claim and the Bank Loan Documents as provided above by the proposed purchaser and all of its insiders or controlling persons, all in form and substance acceptable to the Bank.    After consulting with the Bank, the Debtor can propose to take the highest and best cash offer for the purchase of the new equity interests in the Debtor at the time of the Hearing on Confirmation, so long as the cash purchase price exceeds $65,000.00 and provides the required guaranty and assumption agreement acceptable to the Bank and provided that all creditors and parties-in-interest may object to any Bid and the proposed sale to a proposed purchaser.  Even if a person or entity other than Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani.is the successful bidder for the new membership interests in Debtor under this Plan, the Plan and the rights and treatment of creditors and claims under the Plan are not impaired, changed or affected.  Any winning bidder for the new equity interests in the Debtor acquires such new equity interests subject to (and must expressly assume): (i) the Plan, (ii) the Debtor's duties and obligations under the Plan, the Bank Loan Documents, (iii) the allowance and treatment of claims, rights and liens under the Plan and the rights and remedies of creditors under the Plan, including with respect payment of the Bank's Allowed Secured Claim and the obligations of the Debtor and the purchaser at the Closing. The Debtor shall solicit such bids by noticing this Plan out to the creditors in this case.  The equity interest holders are impaired under the Plan.  If the successful purchaser at the Auction (including any purchaser who is affiliated with Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani. or part of a group including Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani.) is other than solely Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani., individually, then the successful purchaser and all persons who own or control the proposed purchaser, shall execute and deliver the Purchaser Guaranty in favor of the Bank.

### ARTICLE VI
### MEANS FOR IMPLEMENTATION OF PLAN

**6.01    Implementation of Plan; Vesting.** This Plan will be implemented, pursuant to Section 1123(a)(5) of the Code, by the commencement of payments as called for in the Plan.

Upon the Effective Date, all property of the Debtor and its Estate shall vest in the Debtor, subject to the Allowed Secured Claims in this Plan.

The funds necessary for the satisfaction of the creditors' claims shall be generated from the Debtor's income and the auction proceeds.

### ARTICLE VII
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01.    Rejection of Executory Contracts and Unexpired Leases.** Debtor shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), its unexpired leases of real property and executory contracts by separate motion and order prior to the Confirmation Date or as part of Confirmation of a Plan in this case.

**7.02.    Reservation of Rights.** The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**7.03.    Bar Date for Claims Based on Rejection.** If the rejection of an executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

### ARTICLE VIII
### PROVISIONS FOR THE RETENTION,
### ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT
### OF CLAIMS BELONGING TO THE DEBTOR AND THE ESTATE
### INCLUDING PREFERENCES AND CONVEYANCES

**8.01.    The Debtor's Causes of Action.** Except as otherwise released pursuant to the

Page 16

Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Debtor for the benefit of the Creditors subsequent to the Effective Date.

**8.02.    Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01.    Discharge and Release of Debtor.** Pursuant to Bankruptcy Code Section 1141(d)(2), confirmation of this Plan discharges the Debtor from all liabilities save and except those treated in accordance with the Plan and nothing shall release the Debtor from the terms of the Plan.

**9.02.    Released Entities.** None of the officers, financial advisors, attorneys, or employees of the Debtor (collectively the "Released Entities") shall have any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan.

**9.03.    Legal Binding Effect.** The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.04.    Permanent Injunction.** Confirmation of the Plan shall result in the issuance of a

permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor and any other entity against whom prosecution of the any Claims could result in a Claim being asserted against the Debtor that could arise directly or indirectly out of a claim against the **Debtor**.

From and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however,* that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall continue until the Debtor has been granted a discharge by the Court or such creditor is paid in full as called for by the Plan. The setoff rights of the Texas Comptroller of Public Accounts are hereby preserved, and such rights shall therefore be unaffected by the Plan or confirmation thereof.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01.** **Request for Relief Under Bankruptcy Code Section 1129**. In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Debtor reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02.** **Revocation**. The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03.** **Effect of Withdrawal or Revocation**. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04.** **Due Authorization by Creditors**. Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05.** **Entire Agreement**. This Plan, as described herein, the Confirmation Order,

and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06.**   **Section 1146 Exemption.**  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07.**   **Provisions Governing Distributions.**  All payments and distributions under the Plan shall be made by the Debtor as indicated.  Any payments or distributions to be made by the Debtor pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed).  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall remain the property of the Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08.**   **Governing Law.**   Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01**    The Debtor may propose amendments to or modifications of this Plan under Bankruptcy Code Section 1127 at any time prior to Confirmation upon notice to all parties affected thereby and providing such parties an opportunity to be heard on the proposed amendment. After Confirmation, the Debtor may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Final Order in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of Claimants or Interest holders are not materially and adversely affected.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01**    **Allowance of Claims**.  To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02**    **Executory Contracts and Unexpired Leases Proceedings**.    To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to §§ 365 and 1123 of the Code and Article VII of the Plan.

**12.03**    **Plan Interpretation**.  To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04**    **Plan Implementation**.  To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05**    **Plan Modification**.  To modify the Plan pursuant to § 1127 of the Code and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of participants of any Classes of the Plan without the consent of such Class.

**12.06**    **Adjudication of Controversies**.  To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**12.07**    **Injunctive Relief**.  To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08**    **Interpleader Action**.  To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09**    **Correct Minor Defects**.  To correct any defect, cure any omission or reconcile

Page 20

any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

      **12.10**   **Authorization of Fees and Expenses**. To review and authorize payment of professional fees incurred prior to the Effective Date.

      **12.11**   **Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

      **12.12**   **Final Decree**. To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Dated: January 11, 2013

Respectfully submitted,

/s/ Arthur Ungerman
ARTHUR UNGERMAN
Attorney at Law
8140 Walnut Hill Lane
Suite 301
Dallas, Texas 75231
(972) 239-9055 Telephone
(972) 239-9886 Facsimile
COUNSEL FOR THE DEBTOR

/s/ Jagmohan Dhilon
Jagmohan Dhilon
Managing Member of the Debtor
New Hope Hospitality, LLC

/s/ Jagmohan Dhilon

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NEW HOPE HOSPITALITY, LLC, | § | CASE NO. 12-31959-hdh-11 |
| Debtor | § | Chapter 11 |
| | § | |

### FIRST MODIFICATION TO FIRST AMENDED PLAN OF REORGANIZATION DATED JANUARY 11, 2013

New Hope Hospitality, LLC (the "Debtor") proposes the following First Modification to First Amended Plan of Reorganization Dated January 11, 2013 ("Modification") pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtor. This Modification modifies the First Amended Plan of Reorganization dated January 11, 2013 (the "Plan"). This Modification is supported by the Income and Expense Statement attached hereto as **"Exhibit 1"**, Amended Cash Flow Budget attached hereto as **"Exhibit 2"** and Amended Claims Summary and Plan Payment Schedule attached hereto as **"Exhibit 3."**

### ARTICLE V
### PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The treatment of the Class 1 Claims set forth in Article V of the Plan is amended as follows:

**Class 1 Claims.** The Class 1 Claims will be paid once Allowed in full by the Debtor and on or before the Effective Date. These claims are priority claims pursuant to Section 507(a)(2) of the Bankruptcy Code. These claims include claims for Hamptons Inn Franchise, LLC, ("Franchisor") Debtor's attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment. Payment of post-petition franchise fees to Franchisor shall continue to be paid in the ordinary course. Franchisor is not required to file a request for payment of administrative expenses, and the requirement for Debtor to make all such payments in the ordinary course is incorporated into this Plan by this provision. The arrearage claim of Franchisor, will be paid once allowed on the Effective Date. Franchisor shall be allowed reasonable attorneys fees and expenses in the amount of $10,000.00.

The Debtor has an obligation under that certain Franchise License Agreement dated September 18, 2008 as amended on August 27, 2009 (the "Franchise Agreement"), with Franchisor to make periodic upgrades to the Hotel to improve its functionality. These upgrades include upgrading the exercise room and the lobby. Debtor has budgeted $131,741.00 for these upgrades. The work will begin on the Effective Date and will be funded through cash on hand in

the Debtor-in-Possession Account. The Debtor will complete the required upgrade to the exercise room by June 30, 2013 and the lobby will be completed by December 31, 2014.

The treatment of the Class 7 Equity Interests set forth in Article V of the Plan is amended as follows:

**Class 7 - Equity Interests.** On the Confirmation Date, all Equity Interests shall be treated as follows:

On the Effective Date, all equity interests shall be cancelled. The new equity interests in the Debtor shall be issued 65% to Jagmohan Dhillon, 17.5% to Tarlochan Kataria and 17.5% to Gurender Sahani who are contributing to the Debtor $70,000.00 total. $70,000.00 shall be deposited into the Debtor's counsel's trust account prior to the Confirmation Date. If the Plan is not Confirmed, the $70,000.00 will be returned to Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani.

The Debtor believes that the Plan will not violate the absolute priority rule and will be consensual as to the unsecured creditors. In the event that the Class 6 unsecured creditors do not vote for the Plan, and the Bankruptcy Court requires an auction, then: (i) the Existing Equity Interests will be cancelled on the Effective Date, (ii) the new equity interests in the Debtor shall be sold at an Auction sale as set forth herein, and (iii) the new equity interests in the Debtor shall be issued to the successful bidder for the interest in the Debtor at the Auction, subject to the terms of this Plan. If the Plan is not confirmed by the Court at the Confirmation Hearing, then the sale of the equity interests shall not proceed and the sale shall be cancelled. The Debtor shall remain the same corporate entity, without change in its structure.

The auction (the "Auction") under the Plan shall be held at the Confirmation Hearing. Any person or entity that desires to be considered for a possible bid must serve on counsel for the Debtor and EH National Bank (the "Bank") at least seven (7) business days prior to the Confirmation Hearing the following bid and supporting information (collectively, a "Bid") (i) a copy of its proposed bid containing the cash purchase price for the equity interests in Debtor, and all terms and conditions of the Bid, (ii) information identifying the proposed purchaser and all persons or entities who will own or control the proposed purchaser, (iii) information identifying the financial ability of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan, (iv) information identifying the relevant experience and management of the proposed purchaser and all persons or entities who will own or control the proposed purchaser to perform the Plan, (v) an agreement by the proposed purchaser, and all persons who own or control the proposed purchaser, to execute at Closing the Purchaser Guaranty, in a form acceptable to the Bank. The Debtor, the Bank and any other party- in- interest may object to any proposed Bid for any reason.

If an Auction proceeds, the new equity interests in Debtor shall be sold for the highest and best bid, consistent with the terms of the Plan and subject to objections by creditors and parties-in- interest. Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani's combined opening bid at an Auction sale is $70,000.00 for 100 percent of the new equity interests. Any Bid by another person or entity must exceed $70,000.00 by at least $10,000 and must provide for a full and unconditional guaranty of payment and performance the Bank's Allowed Secured

Claim and the Bank Loan Documents as provided above by the proposed purchaser and all of its insiders or controlling persons, all in form and substance acceptable to the Bank. After consulting with the Bank, the Debtor can propose to take the highest and best cash offer for the purchase of the new equity interests in the Debtor at the time of the Hearing on Confirmation, so long as the cash purchase price exceeds $70,000.00 and provides the required guaranty and assumption agreement acceptable to the Bank and provided that all creditors and parties-in-interest may object to any Bid and the proposed sale to a proposed purchaser. Even if a person or entity other than Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani is the successful bidder for the new membership interests in Debtor under this Plan, the Plan and the rights and treatment of creditors and claims under the Plan are not impaired, changed or affected. Any winning bidder for the new equity interests in the Debtor acquires such new equity interests subject to (and must expressly assume): (i) the Plan, (ii) the Debtor's duties and obligations under the Plan, the Bank Loan Documents, (iii) the allowance and treatment of claims, rights and liens under the Plan and the rights and remedies of creditors under the Plan, including with respect payment of the Bank's Allowed Secured Claim and the obligations of the Debtor and the purchaser at the Closing. The Debtor shall solicit such bids by noticing this Plan out to the creditors in this case. The equity interest holders are impaired under the Plan. If the successful purchaser at the Auction (including any purchaser who is affiliated with Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani. or part of a group including Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani.) is other than solely Jagmohan Dhillon, Tarlochan Kataria and Gurender Sahani., individually, then the successful purchaser and all persons who own or control the proposed purchaser, shall execute and deliver the Purchaser Guaranty in favor of the Bank.

Notwithstanding the foregoing, the Franchise Agreement which allows Debtor to operate as a Hampton Inn & Suites, is not being transferred as part of the Auction. The Franchise Agreement and all rights thereto, including the Debtor's rights to use Hampton Inn & Suites' marks and system, is a nonassignable asset that is not being sold or acquired through the Auction. If the equity interests are sold through the Auction, to any person other than Jagmohan Dhillon (65%), Tarlochan Kataria (17.5%) and Gurender Sahani (17.5%) the Franchise Agreement will be rejected and terminated on the Effective Date. In order to operate as a Hampton Inn & Suites, the purchaser(s) will need to apply to enter into a new franchise agreement with Hampton Inn & Suites or one of its affiliates, which may or may not be approved in Hampton Inn & Suites' sole and absolute discretion. Prospective bidders may obtain a license application by contacting Robert Giardino Robert.Giardino@hilton.com telephone number (901) 374-5107. Prospective Bidders are encouraged to contact Mr. Giardino for the application and to submit a complete application package as early as possible. Neither the Debtor nor Hampton Inn & Suites guarantee a response to an application within any certain time period.

3

# ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The following Section 7.04 is added to Article VII of the Plan.

### 7.04.   Hampton Inn & Suites Franchise License Agreement

Debtor executed the Franchise Agreement with Hamptons Inn Franchise, LLC on September 18, 2008, as amended on August 27, 2009. The Debtor shall assume the Franchise Agreement effective as of the Effective Date, only (i) in the event that the new equity interests are issued jointly and only to Jagmohan Dhillon (65%), Tarlochan Kataria (17.5%) and Gurender Sahani (17.5%); (ii) subject to cure of all monetary defaults under the assumed Franchise Agreement by payment to Franchisor on the Effective Date in the amount of (a) $59,246,76 for past due pre-petition franchise fees, plus (b) payment of actual and reasonable attorney's fees and costs incurred by the Franchisor in the amount of $10,000.00 ("Cure Amount") for a total Cure Payment of $69,246.76.    Notwithstanding any term or provision of the Plan, the Confirmation Order, or the Disclosure Statement, all the terms and conditions of the Franchise Agreement remain in full force and effect and neither the Franchise Agreement and/or Franchisor's rights thereunder, nor any obligation of the Debtor/Franchisee to Franchisor thereunder, shall be modified, altered, limited or otherwise changed by the Plan, the Confirmation Order, or the Disclosure Statement. In the event of a default under the plan, counsel for Franchisor shall provide notice of the default via facsimile to counsel for the debtor. and by mail to the Debtor.  Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Franchisor shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Franchisor shall only be required to provide two notices of default. Upon a third event of default, the Franchisor shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to complete all required upgrades to the exercise room by June 30, 2013 and to the lobby mixer by December 31, 2014 shall constitute an event of default.

# ARTICLE IX
## EFFECT OF CONFIRMATION

Section 9.04 is amended as follows:

### 9.04.   Permanent Injunction.  Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor and any other entity against whom prosecution of the any Claims could result in a Claim being asserted against the Debtor that could arise directly or indirectly out of a claim against the **Debtor.**

From and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other

proceeding of any kind with respect to any such Claim against the Debtor; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however,* that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall continue until the Debtor has been granted a discharge by the Court or such creditor is paid in full as called for by the Plan. The setoff rights of the Texas Comptroller of Public Accounts are hereby preserved, and such rights shall therefore be unaffected by the Plan or confirmation thereof.

Notwithstanding the foregoing, nothing herein prevents a Claimant from asserting any form of guaranty, indemnity, direct liability, or other rights against non-debtor third parties.

Dated: February 5, 2013

                                        Respectfully submitted,

                                        /s/ Arthur Ungerman
                                        ARTHUR UNGERMAN
                                        Attorney at Law
                                        8140 Walnut Hill Lane
                                        Suite 301
                                        Dallas, Texas 75231
                                        (972) 239-9055 Telephone
                                        (972) 239-9886 Facsimile
                                        COUNSEL FOR THE DEBTOR


                                        /s/Jagmohan Dhilon
                                        Jagmohan Dhilon
                                        Managing Member of the Debtor
                                        New Hope Hospitality, LLC

### CERTIFICATE OF SERVICE
The undersigned hereby certifies that on February 5, 2013 a true and correct copy of the above First Modification to First Amended Plan of Reorganization dated January 11, 2013 was mailed via First Class U.S. Mail to the following parties: **Attached Mailing Matrix**

                                        s/ Arthur Ungerman
                                        Arthur Ungerman


5

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **NEW HOPE HOSPITALITY, LLC,** | § | **CASE NO. 12-31959-hdh-11** |
| **Debtor** | § | **Chapter 11** |
| | § | |

**SECOND MODIFICATION TO FIRST AMENDED PLAN OF REORGANIZATION**
**DATED JANUARY 11, 2013 AND RELATED**
**DISCLOSURE STATEMENT**

New Hope Hospitality, LLC (the "Debtor") proposes the following Second Modification to First Amended Plan of Reorganization Dated January 11, 2013 ("Second Modification") and the related Disclosure Statement, pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtor. This Second Modification modifies the First Amended Plan of Reorganization dated January 11, 2013, as modified on February 5, 2013 (the "Plan"). This Second Modification addresses the changes required in the Plan as a result of the Court's ruling on the valuation of the Debtor's primary asset. The changes are not adverse **and** material to the creditors in this case and will not change the amounts that the unsecured creditors will receive under the Plan as currently proposed. This Modification is supported by the Amended Cash Flow Budget attached hereto as **"Exhibit 1"** and Amended Claims Summary and Plan Payment Schedule attached hereto as **"Exhibit 2."**

**MODIFICATIONS**

**Class 5 Claims.** The Allowed Secured Claim of EH National Bank shall be paid as set forth in the Plan except as stated below:

EH National Bank shall be paid based on an Allowed Secured Claim of $5,168,829.55 (the "Allowed Secured Claim") and shall be paid in full over ten (10) years with the Allowed Secured Claim amount amortized over thirty (30) years with interest on such amount at the fixed rate of 4.85% per annum and a final balloon payment of $4,202,214.35 at the end of the ten (10) year term.

The updated Section 1111(b) calculation as relevant to the treatment of EH National Bank can be summarized as follows:

| Total Claim Amount of EH National Bank | $5,770,054.96 |
|---|---|
| Value of the collateral | $5,500,000.00 |
| Total amount of priming ad valorem tax liens | $331,170.45 |
| Allowed Secured Claim of EH National Bank | $5,168,829.55 |

The modified Plan proposes to pay the Allowed Secured Claim at the rate of $27,275.49 a month based on a 30 year amortization and a 4.85% annual percentage rate for 120 months. Assuming that this period and rate are approved by the Court under 11 U.S.C. Section 1129, the total paid to EH National Bank over the next 120 months is projected to be $3,273,058.80. The balloon payment on the Allowed Secured Claim amount in 120 months will be $4,202,214.35.

Under the Section 1111(b) election, the total payments paid out are $3,273,058.80. Such amount is then subtracted from the Total Claim Amount of $5,770,054.96 leaving an unpaid balance in 120 months of $2,496,996.16. By comparing this amount with the amount remaining on the Allowed Secured Claim the balloon payment in ten years is $4,202,214.35.

The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept of reject the Plan.

**Class 7 - Equity Interests.**  All places in the Plan that read $70,000.00 for the equity contribution will read $71,000.00

Dated: March 13, 2013

Respectfully submitted,

/s/  Arthur Ungerman
ARTHUR UNGERMAN
Attorney at Law
8140 Walnut Hill Lane
Suite 301
Dallas, Texas 75231
(972) 239-9055 Telephone
(972) 239-9886 Facsimile
COUNSEL FOR THE DEBTOR

/s/Jagmohan Dhilon
Jagmohan Dhilon
Managing Member of the Debtor
New Hope Hospitality, LLC

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 13, 2013 a true and correct copy of the Second Modification to First Amended Plan of Reorganization dated January 11, 2013 was mailed via First Class U.S. Mail to the following parties: **Attached Mailing Matrix**

s/  Arthur Ungerman
Arthur Ungerman

2



US BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_Hon. De Wayne Hale_

**United States Bankruptcy Judge**

**Signed March 29, 2013**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NEW HOPE HOSPITALITY, LLC, | § | CASE NO: 12-31959-HDH-11 |
| | § | |
| | § | |
| Debtor. | § | CHAPTER 11 |

### ORDER CONFIRMING DEBTOR'S FIRST AMENDED PLAN OF
### REORGANIZATION DATED JANUARY 11, 2013 (AS MODIFIED)

CAME ON FOR CONSIDERATION BY THE COURT, NEW HOPE HOSPITALITY,

LLC'S First Amended Plan of Reorganization Dated January 11, 2013 (*Docket No. 68*), the First

Modification to First Amended Plan of Reorganization dated January 11, 2013 (*Docket No. 83*)

and the Second Modification to First Amended Plan of Reorganization dated January 11, 2013

and Related Disclosure Statement on March 13, 2013 (*Docket No. 99*) (the "Plan"). The Court

having considered the evidence presented and the arguments of counsel and for the reasons set

forth herein, confirms the Plan; it is accordingly,

ORDERED, ADJUDGED AND DECREED that the Plan complies with Section 1129 of

the Bankruptcy Code, 11 U.S.C. Section 1129, including the following:



EXHIBIT

2

    a.      <u>Section 1129(a)(1)</u>. The Plan complies with the applicable provisions of Title 11.

    b.      <u>Section 1129(a)(2)</u>. The proponents of the Plan have complied with the applicable provisions of Title 11.

    c.      <u>Section 1129(a)(3)</u>. The Plan has been proposed in good faith and not by any means forbidden by law.

    d.      <u>Section 1129(a)(4)</u>. Any payments for services or for costs and expenses in connection with the case, or in connection with the Plan and incident to the case, have been approved by, or are subject to the approval of, this Court as reasonable.

    e.      <u>Section 1129(a)(5)</u>. The proponents of the Plan have disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as an affiliate or successor of the Debtor, the continuation in such employment is in the best interest of the creditors and public policy, and the nature of any compensation to be for such insider.

    f.      <u>Section 1129(a)(6)</u>. This provision is not applicable.

    g.      <u>Section 1129(a)(7)</u>. With respect to each Class of impaired Claims or Interests, each holder of a Claim included in such Class (i) has accepted the Plan, or (ii) will receive or retain on account of such Claim property of value, as of the Effective Date of the Plan, that is not less than the amount such holder would receive or retain if the Debtor were liquidated under Chapter 7 of Title 11 on such date.

    h.      <u>Section 1129(a)(8)</u>. A majority in number and two-thirds in amount of all impaired classes of claims that have voted have voted to accept the Plan.

    i.      <u>Section 1129(a)(9)</u>. The Plan provisions include the following:

      i.      Holders of Allowed Administrative Claims will be paid in full.

      ii.     Holders of Allowed Priority Claims will be paid pursuant to Section 1129.

j.     Section 1129(a)(10). At least one Class of impaired Claims has voted to accept the Plan, determined without the acceptance of any insider.

k.     Section 1129(a)(11). The Plan is feasible. Confirmation of the Plan is not likely to be followed by the liquidation of, or need for further financial reorganization of, the Debtor. The Debtor has shown they have sufficient cash flow to make the payments called for by the Plan.

l.     Section 1129(a)(12). All fees under 28 U.S.C. § 1930 have been paid or will be paid on the Effective Date.

m.     Section 1129(a)(13). This subsection does not apply to the Debtor.

n.     Section 1129(a)(14). This subsection does not apply to the Debtor.

o.     Section 1129(a)(15). This subsection does not apply to the Debtor.

p.     Section 1129(a)(16). This subsection does not apply to the Debtor.

It is further ORDERED, ADJUDGED AND DECREED that:

q.     The Texas Comptroller of Public Accounts shall be entitled to an Allowed Claim in the amount of $3,029.53 for hotel taxes and an Allowed Claim in the amount of $7,108.68 for Franchise Taxes. The Allowed Claims of the Texas Comptroller of Public Accounts shall be paid in Class 4 of the Plan as priority tax claims. Debtor has incurred Texas franchise tax liability for the 2013 post-petition tax period. The return and payment shall be filed and paid in the ordinary course of business. The requirement for Debtor to file the return and make payment in the ordinary course of business is incorporated into the Plan by this provision.

It is further ORDERED, ADJUDGED AND DECREED that the Debtor shall pay the United States Trustee quarterly fees until the Clerk of the Court closes the case and it shall file quarterly reports with the United States Trustee in the form required by the Office of the United States Trustee until the case is closed.

It is further ORDERED, ADJUDGED AND DECREED that the Plan is hereby confirmed.

***END OF ORDER***

APPROVED BY:

/s/ Arthur Ungerman
**Arthur Ungerman**
8140 Walnut Hill Lane,
Suite 301
Dallas, Texas 75231
*Attorney for Debtor*